

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANTHONY DANIELS,
                  Petitioner,

    -against-

THOMAS LaVALLEY,
                  Respondent.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
08-CV-1424 (TCP)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 14 2013 ★
LONG ISLAND OFFICE

PLATT, District Judge.

Before the Court is Anthony Daniels' ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2254. ECF No. 1. The Petition challenges Petitioner's conviction, following a jury trial in New York State Supreme Court (Suffolk County), and the subsequently imposed sentence. Pet'r's Pet. 1. The Court **DENIES** the Petition.

## BACKGROUND

### A.    Facts

On June 24, 2003, after receiving their respective dispatches, a Suffolk County police officer and local fire department volunteers found Norman Phillips ("the deceased") lying in a car ("the Infinity"); the deceased had suffered multiple gunshot wounds. *See, e.g.*, Trial Tr. 62:11-63:4. The deceased died from these gunshot wounds. *See, e.g.*, Pet.'s State App. Brief, 2005 WL 5340171, *4.

In the course of their investigation of the homicide, detectives focused on Petitioner as a suspect. *See, e.g.*, Trial Tr. 145-55. On July 28, 2003, when detectives attempted to detain Petitioner for interrogation, they found Petitioner in possession of a .357 magnum handgun. *See id.*, 149:15-164:1; Pet.'s State App. Brief 6. When the investigators compared left palm prints found on the Infinity to the left palm print of Petitioner, the palm prints matched. *See* Trial Tr.

1

485:20-22. Additionally, investigators found that two bullets taken from the body of the deceased, and one from the crime scene (after passing through the body of the deceased), were fired from the .357 magnum handgun found on Petitioner's person when he was arrested. *See* Trial Tr. 396:3-5; 397:22-25.

At the conclusion of the trial, the jury found Petitioner guilty of murder in the second degree and criminal possession of a weapon in the second degree. Trial Tr. 668:14-20. The jury found Petitioner not guilty of criminal possession of stolen property in the fourth degree. Trial Tr. 668:21-24. The State court sentenced Petitioner to 25 years-to-life for the murder charge and 15 years for the possession charge. *See* Resp.'s Brief 3. The court ordered Petitioner to serve these sentences consecutively. *Id.*

## B. Claims

The Petition presents four claims: (i) Petitioner was denied his rights, under the Sixth Amendment, to effective counsel and to confront witnesses against him as to the testimony of Elaine Colbert (Pet. 16); (ii) Petitioner was denied effective counsel as to his counsel's failure "to object to evidence of information of a missing witness [who] appeared on the prosecutor's call list." *(id.* at 17); (iii) Petitioner was denied his Confrontation Clause rights because he was unable to cross-examine an unnamed witness prior to trial *(id.* at 18); and (iv) Petitioner was denied his Fourteenth Amendment rights due to an un-Constitutional prison sentence *(id.* at 20).[1]

---

[1] While Petitioner argues his Fourteenth Amendment rights were violated, the Court will also review under the Eighth Amendment's protection from cruel and unusual punishment.

## DISCUSSION

### A. Legal Standard for a Petition for a Writ of Habeas Corpus

#### I. Generally

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 131 S. Ct. 770, 780 (2011).

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in the State courts. *See* 28 U.S.C. § 2254(b)(1)(a). Exhaustion requires alerting the State courts to the Federal nature of the claim and raising the claim in the State's highest court. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999).

> If an application [for a Writ of Habeas Corpus] includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies. Under § 2254(d), that application "shall not be granted with respect to [such a] claim ... unless the adjudication of the claim": "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." "This is [] 'difficult to meet,' *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (federal court is barred from granting a habeas petition if the petitioner has not exhausted all available state remedies. "Exhaustion requires a petitioner fairly to present the federal claim in state court." Presentation means a petitioner "has informed the State court of both the factual and the legal premises of the claim he asserts in Federal court.").

3

## II.     Analysis

As Petitioner admits, he failed to raise the issues presented to the Court herein in his State appeal. *See* Pet. at 5, 7, 8, 10 (*e.g.*, page 5: "if you appealed from the judgment of conviction, did you raise this issue?" Petitioner checked "No"). As to claims one, two, and three, clearly Petitioner failed to exhaust the remedies available to him in State court.

In his State court appeal, Petitioner presented four claims. *See* Pet.'s App. Brief 3. Claim one, ineffective representation (because his counsel failed to move for a Mapp/Huntley hearing to attempt to suppress the allegedly ill-found murder weapon and oral admissions). Claim two, denial of his right to a fair trial (because the trial court permitted an autopsy photograph to be shown to the jury). Claim three, the State failed to prove its case beyond a reasonable doubt. Claim four, the imposition of consecutive maximum sentences was harsh and excessive.

The Petition includes two claims of ineffective assistance of counsel. While the State appeal includes one such claim, it does not address the same allegedly ineffective counsel issues as the Petition. As such, the State court did not have the opportunity to address the ineffective counsel claims brought herein. Claims one and two are procedurally barred.

The Petition's third claim argues that Petitioner was not permitted to cross-examine an unnamed witness prior to trial. This claim was not brought in the State appeal. As such, it is procedurally barred from this review. Petitioner's fourth claim argues that because the same weapon was involved in both offenses, Prisoner's prison sentences must run concurrently, not consecutively. While Petitioner did not address, in the State court appeal, the Constitutionality of his sentence, the Court, in the interests of justice, will deem this claim exhausted.

Petitioner's first three claims are procedurally barred and the Petition is dismissed as to those claims. For the reasons set forth *infra*, however, even if the claims had been exhausted, the Court would deny those claims.

### B. Ineffective Assistance of Counsel

#### i. Legal Standard

"[T]he proper standard for attorney performance is that of reasonably effective assistance[;] . . . the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

"Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest . . . . Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

"A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal citations omitted).

As to habeas review,

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference

5

and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 131 S. Ct. 770, 785-86 (2010) (internal citations and quotations omitted; italics in original).

### ii. Analysis

For emphasis, this Court's job, under *Harrington*, is not to decide whether Petitioner's counsel met the *Strickland* standard; rather, it is to determine whether the State court's determination on the issue was reasonable. 131 S. Ct. at 785. The State court reasonably held that Petitioner's trial counsel's "conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also People v. Daniels*, 826 N.Y.S.2d 369, 370 (N.Y. App. Div. 2006) ("[t]he defendant received meaningful representation throughout the course of the proceedings."). The State appellate court held Petitioner's counsel "delivered adequate cross-examinations and arguments . . . presented clear and cogent opening and summation . . . and secured the defendant an acquittal on the count of criminal possession of stolen property []." *Daniels*, 826 N.Y.S.2d at 370. The Court holds this determination was reasonable.

Moreover, as Respondent notes, *Crawford* violations (the crux of claim one) do not involve pre-trial suppression hearings. *See Unites States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." (citations omitted)). Ms. Colbert testified at trial; she was cross-examined by Petitioner's trial counsel. There was no *Crawford* violation.

Whether a great lawyer would have requested a *Dunaway* hearing or objected to evidence or witnesses at trial is not the Court's concern as to the Petition; the reasonableness of the State

court's determinations is. As the Court finds the State court's holding (as to Petitioner's Constitutional right to effective representation) was reasonable, claims one and two are denied.

### C. Confrontation Clause and the "Right" to Depose

#### i. Standard

The primary object of the Confrontation Clause of the Sixth Amendment was to prevent depositions or ex parte affidavits being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Barber v. Page*, 390 U.S. 719, 721 (1968) (quoting *Mattox v. United States*, 156 U.S. 237, 242-243 (1895)).

#### ii. Analysis

The Confrontation Clause does not grant a right to depose witnesses before trial; rather, it ensures, as noted *supra*, defendants may cross-examine a prosecutorial witness in open court. Petitioner's counsel cross-examined the witness at trial.[2] There is no merit, whatsoever, to Petitioner's third claim; the Court denies the Petition as to the third claim.

### D. Excessive Prison Sentence

#### i. Standard

"No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keene*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988)).

---

2 The Court believes Petitioner is most likely referring to witness Anthony Bennett; in any case, the record shows Petitioner's counsel had the opportunity to cross-examine all prosecutorial witnesses.

"Whether a sentence should run concurrently or consecutively is purely an issue of state law and is not cognizable on federal habeas review." *Johnson v. New York*, 851 F.Supp.2d 713, 722 (E.D.N.Y. 2012) (citing *Reyes v. New York*, No. 08 Civ. 8645, 2009 WL 1066938, at *2 (S.D.N.Y. Apr. 21, 2009)).

> The imposition of consecutive sentences under New York State law is governed by New York Penal Law Section § 70.25(2). Specifically, consecutive sentences are not permitted where "more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offense and also was a material element of the other." The New York Court of Appeals has interpreted "act or omission" to include the actus reus of the offense. *People v. Rosas*, 8 N.Y.2d 493, 496 (1997). "Actus reus is defined as '[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability.' "*Id.* at 497 (quoting Black's Law Dictionary 39 [8th ed.2004]).

*Seow v. Artuz*, 98-CV-72, 2007 WL 2890259, at *8 (E.D.N.Y. 2008), *aff'd*, 320 F. App'x 46 (2d Cir. 2009); *see also People v. Gucla*, 794 N.Y.S.2d 126, 127 (N.Y. App. Div. 2007) ("Consecutive sentencing is permissible when the defendant's acts are distinguishable by culpable mental state, nature and manner of use, time, place and victim." (internal quotations omitted)).

### ii. Analysis

Petitioner was convicted for two separate criminal acts: murder in the second degree, which took place on June 24, 2006; and criminal possession of a weapon in the second degree, which took place on July 28, 2003. The Court agrees with Respondent's argument on this matter: "[P]etitioner's act of possessing a loaded weapon at the time of his arrest 'was a complete crime and separate and district' from his use of the weapon the commission of the murder." Resp.'s Brief 17 (quoting *Gucla*, 794 N.Y.S.2d at 127).

The sentencing court had the discretion to sentence Petitioner to consecutive sentences. As the sentence was within prescribed State law, there is no Constitutional issue for the Court to review herein. Petitioner's fourth claim is denied.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Petition for a Writ of Habeas Corpus.

**SO ORDERED.**

Dated: November 14, 2013
Central Islip, New York

/s/ Thomas C. Platt
_____
Thomas C. Platt, U.S.D.J.